[Civ. No. 16817.   Second Dist., Div. One.   June 9, 1949.]

Estate of JOHN L. RIDGWAY, Deceased.   CLAUDE A. RIDGWAY et al., Appellants, v. LORETTA RIDGWAY, as Executrix, etc., Respondent.

Rinehart, Merriam, Parker & Berg, Launer, Chaffee & Launer, Walter B. Chaffee and Leland C. Launer for Appellants.

Roland Maxwell and Paul H. Marston for Respondent.

DORAN, J.—The testator, John L. Ridgway, died on December 17, 1947, aged 85; Loretta Ridgway, a second wife, survived, together with testator's five adult children by a previous marriage, contestants and appellants herein. The respondent, Loretta Ridgway, petitioned for probate of a testamentary instrument dated March 18, 1947. Contestant

Claude A. Ridgway then petitioned for probate of a previous will dated May 3, 1941, and all contestants filed objections to the probate of the later will, claiming that said instrument was not executed in proper legal form; that decedent was of unsound mind, and that the instrument had been procured through undue influence exercised by the respondent, testator's second wife.

The two petitions for probate were consolidated; the case was tried before a jury, and at the conclusion of contestants' evidence the trial court granted a nonsuit as to all grounds of the contest. Both testamentary instruments were admitted to probate. Contestants appeal from the whole of such order excepting that portion thereof which admits to probate the will dated May 3, 1941.

It appears from the record that on May 3, 1941, testator's first wife, Anise Ridgway, and Mr. Ridgway, after being married some fifty years, executed certain deeds in favor of the children, which deeds were not recorded until 1947. On the same day that the deeds were executed, May 3, 1941, testator also executed the earlier of the two wills admitted to probate. That will, in the language of appellants' brief, "left everything which had not been deeded to the children to Anise Ridgway with a proviso that if she were not living at the time of the testator's death that the property should be divided among the children . . . so that the testamentary share plus the deeded share of each child would be equal." Anise Ridgway, the first wife, died in June, 1942.

Testator was married to the respondent, Loretta Ridgway, on January 1, 1943, who was 18 years younger than the testator. "On May 11, 1943," quoting from appellants' brief, "they entered into a property settlement agreement whereby, in return for $10,000.00 and certain furniture and furnishings of their home, Loretta Ridgway waived and relinquished 'all right, title and interest in and to all the property and estate of which the said L. J. Ridgway may die seized or possessed or in which he may have an interest; or any right which I may have to inherit from my said husband, or to administer upon his estate in case of his death.'" Theretofore, testator had written the children that a settlement with the new wife would be made and that the deeds and will previously made would not be affected.

The properties for which deeds had been made out to the children on May 3, 1941, included the Glendale family residence where testator and the second wife continued to live

until Mr. Ridgway's death on December 17, 1947. Other properties conveyed to the children were, a six-unit apartment and a four-unit apartment, both in Long Beach; an oil lease on Long Beach property; two residences in Long Beach and another parcel there located; 15-acre ranch in Tulare County, and certain shares of stock.

According to appellants' brief, "Although the testator had been gradually failing mentally over a considerable period of time, it was not until November of 1946 that it became obvious to his children that testator was not normal mentally. . . . he was hospitalized from February 1 to February 10, 1947." In that month the son and contestant Claude A. Ridgway, instituted guardianship proceedings, serving testator with a citation therein. On March 17, 1947, testator signed a complaint in an action to secure return of the properties previously deeded to the children; signed an agreement with the wife cancelling the property settlement agreement, and executed the will which appellants attack.

The will of March 18, 1947, gave to the surviving wife, Loretta Ridgway, "a life interest in and to the property now occupied by us as our residence at 1953 West Mountain Street, Glendale, California," with the direction "that there shall be paid to her from my estate for the rest of her life sufficient moneys to pay for all taxes and upkeep of said property . . . I further desire that she have a family allowance to be fixed by the Court, separate and distinct from this legacy and bequest."

It is further stated in said will that certain recorded documents, namely the deeds testator had previously made to the children, "were never intended by me to be transfers of present title or to be effective during my lifetime or to convey any right, title or interest whatsoever but were intended by me as testamentary dispositions," but stated that "Subject to the provisions of this Will, I desire my property to go as set forth in said documents." If any person "directly or indirectly seeks to have said documents declared to be deeds or assignments," etc. "I leave to such persons, in lieu of any other provision, the sum of One Dollar ($1.00) and no more."

It is appellants' contention that "Substantial evidence was presented at the trial below to support contestants' allegation that testator was incompetent to make a will on March 18, 1947," for the reason that "Testator was not able to understand and carry in mind the nature and situation of the property"; was not capable "of understanding the act he was

doing"; and at the time of executing the will, was "suffering from a delusion." Appellants also assert that "There was substantial evidence of undue influence" on the part of the wife, Loretta Ridgway. Appellant therefore argues that the nonsuit granted by the trial court constitutes reversible error.

The record discloses evidence to the effect that from December, 1946, through March 18, 1947, the testator was weak, physically and mentally; that his memory was faulty but better for events that happened many years ago than in respect to recent events; that the attitude towards testator's children fluctuated from anger to affection. During pendency of the guardianship proceedings, a specialist appointed by the court examined John L. Ridgway, and as to testator's history was given "a fairly connected story." A physical examination revealed hardening of the arteries, low blood pressure and marked deterioration. On subsequent examinations, testator "was unable to recall some of the details I had asked him at first"; and "was unable to give me more than four or five parcels of his property." At the trial of the present action three of decedent's sons expressed the opinion that the father was of unsound mind, based upon the latter's childishness, inability to engage in satisfactory conversation, absence of any idea of values; that the father could not understand simple business transactions, etc.

The respondent's brief points out, however, that, as stated in *Estate of Selb*, 84 Cal.App.2d 46, 49 [190 P.2d 277], "It has been held over and over in this state that old age, feebleness, *forgetfulness,* filthy personal habits, personal eccentricities, failure to recognize old friends or relatives, physical disability, absent mindedness and mental confusion do not furnish grounds for holding that a testator lacked testamentary capacity." Respondent also calls attention to the fact that the later will represents a perfectly natural disposition in that testator therein provides for the support and housing of the surviving wife, with the remainder going to the children at the wife's death.

On an appeal from an order granting a nonsuit, the rule in this state is set forth in *Estate of Flood*, 217 Cal. 763, 768 [21 P.2d 579], as follows: "A non-suit or directed verdict may be granted 'only when, *disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from the evidence,* the result is a determination that there is no evidence of sufficient substantiality

to support a verdict in favor of plaintiff if such verdict were given.' " The foregoing means that the conflict, or the fact that there is a conflict, must be disregarded. The rule is as applicable in will contests as it is in other forms of litigation. (*Estate of Ricks,* 160 Cal. 450 [117 P. 532].) In the present controversy there is no disagreement in respect to the applicable rule; the question to be determined is simply whether, in the trial court, contestants presented substantial evidence of the testator's incapacity and of undue influence on the part of testator's second wife. Only if such evidence is disclosed by the record was the trial judge in error in granting a nonsuit.

"It is well settled," states the court in *Estate of Arnold,* 16 Cal.2d 573, 585 [107 P.2d 25], "that mere proof of mental derangement or even of insanity in a medical sense is not sufficient to invalidate a will, but the contestant is required to go further and prove either such a complete mental degeneration as denotes utter incapacity to know and understand those things which the law prescribes as essential to the making of a will, or the existence of a specific insane delusion which affected the making of the will in question."

Giving to the contestants' evidence "all the value to which it is legally entitled," as required by the rule governing nonsuits, it falls far short of suggesting either the "complete mental degeneration" or any "specific insane delusion" specified in the *Estate of Arnold,* quoted above. All that the record does disclose, indeed, is that an aged man, suffering from general senile deterioration both mental and physical, subject to forgetfulness, and leaving the conduct of business matters to a much younger second wife, has executed a will intended to provide for such wife during the latter's lifetime. Testator did not disinherit the children; nor can it be said that the wife "benefited unduly." As respondent's brief asserts, "decedent was doing the natural thing in providing for his wife for her lifetime."

Neither in respect to testator's alleged incompetency, nor on the issue of undue influence claimed to have been exercised by the respondent wife, does the record disclose substantial evidence which should have been passed upon by the jury. In reference to the matter of undue influence, it is said in *Estate of Arnold,* 16 Cal.2d 573, 577 [107 P.2d 25], "The unbroken rule in this state is that courts must refuse to set aside the solemnly executed will of a deceased person . . . unless there be proof of 'a pressure which overpowered the mind and bore down the volution of the testator at the very

time the will was made.' (*Estate of Gleason,* 164 Cal. 756, 765 [130 P. 872]).'' Conceding that a confidential relation existed between the testator and the respondent wife, and that testator was aged and in poor health, the contestants' evidence again falls far short of showing undue influence as that term is defined in the above and other cases. Although it is true, as argued in appellants' brief, that undue influence may be established by indirect and circumstantial evidence, such proof, whether direct or circumstantial, must be of a substantial nature;—conjecture will not suffice. And appellants' brief has cited no case in any way comparable to the present situation, which furnishes support for the contentions herein.

The order appealed from is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied June 27, 1949, and appellants' petition for a hearing by the Supreme Court was denied August 4, 1949. Carter, J., voted for a hearing.